## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

United Steelworkers,
Local Union No. 348,

   Plaintiff,

v.                  Case No. 06-2451-JWL

Magellan Midstream Holdings, L.P.,

   Defendant.

## MEMORANDUM & ORDER

Plaintiff filed this suit under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to compel arbitration of grievances challenging the elimination of a benefit that was established through a Memorandum of Understanding between the parties. The parties have filed cross-motions for summary judgment. As explained below, plaintiff's motion is granted, defendant's motion is denied and defendant is directed to submit the grievances to arbitration.

**Facts**

The facts pertinent to the court's resolution of the pending motions are largely undisputed. Defendant is engaged in the transportation, storage and distribution of refined petroleum products. Plaintiff is recognized as the exclusive bargaining agent for certain employees of defendant, including maintenance operators, pipe liners, lead operators, truck drivers, welders and lead controllers.

In early November 2001, the parties entered into contract negotiations,[1] as the collective bargaining agreement between them was due to expire on January 31, 2002. From the outset of the negotiations, one of defendant's proposals was to eliminate the welfare benefit provisions of the collective bargaining agreement and to give bargaining unit employees the same benefits as were offered to non-represented employees. During the negotiation process, plaintiff agreed to accept the benefit plans available to non-represented employees, including a paid-time-off (PTO) program. Following the conclusion of negotiations, the parties prepared a Memorandum of Agreement (MOA) dated February 8, 2002, describing the settlement of issues which would be recommended to the bargaining unit employees. The MOA specifically stated that the bargaining unit employees would become eligible for the slate of welfare benefit plans available to non-represented employees in lieu of the existing welfare plan language in the contract.

Thereafter, plaintiff apparently formed the belief that it had been misled by defendant during negotiations concerning the PTO program. Thus, plaintiff asked its membership to vote against the contract proposal and to vote to strike. To alleviate plaintiff's concerns and to avoid a "no" vote on the contract, the parties negotiated a Memorandum of Understanding (MOU) dated February 26, 2002. The MOU provides for an "Illness Bank" that essentially supplements the welfare benefit plans set forth in the contract (and the plans offered to non-represented employees) by providing covered employees with additional leave for illness-related reasons.

---

[1]While the distinction is not pertinent to the issues raised by the parties' motions, the negotiations were actually conducted by the parties' respective predecessors-in interest, Williams Pipe Line Company and Paper, Allied-Industrial, Chemical and Energy Workers International Union Local 5-348.

2

The MOU does not contain a provision for arbitration and is silent on that subject. By its express terms, the MOU was scheduled to expire on January 31, 2006.

Ultimately, the membership ratified the collective bargaining agreement (the "Agreement" or CBA) effective February 1, 2002 with the contract period ending January 31, 2006. The Agreement contains the following arbitration provision:

> Differences arising between the Union and the Company relating to the interpretation or performance of this Agreement that cannot be settled by mutual agreement shall, upon written notice by one party to the other as outlined in Article IX, paragraph 4, be submitted to arbitration.

The Agreement does not incorporate the MOU by reference (nor does it mention the MOU in any respect) and the MOU does not reference the Agreement in any respect. Moreover, the MOU was not appended to the Agreement despite the fact that other Memoranda of Understanding were appended to the Agreement. Nonetheless, Jesse Miller, the individual who participated in and represented plaintiff in the contract negotiations with defendant, avers that it was his intent and understanding that the MOU was to be considered part of the Agreement and that defendant's representatives made "affirmative statements" to him indicating their view that the MOU was considered part of the Agreement.

On September 9, 2005, the parties agreed that the term of the Agreement and all provisions therein would be extended and renewed through January 31, 2009 and the terms of the Agreement generally remained the same.[2] Prior to negotiating the contract extension, Chris

---

[2] After the parties executed the Contract Extension Offer, new pages were pasted into the 2002 contract to reflect the changes that had been agreed upon concerning wage rates. The MOU was not pasted into or otherwise included in the amended Agreement.

Matousek, defendant's human resources representative, contacted via e-mail certain management-side members of the parties' labor relations committee concerning the MOU and queried whether a contract extension would "by default" also extend the MOU. Defendant's in-house counsel responded, again via e-mail, that "[u]nless the text of the contract extension references the MOU, the MOU will expire as previously set." Ultimately, defendant decided to "stick with the plan of not even bringing up the illness bank" during contract extension negotiations and the Contract Extension Offer made no reference to the MOU.

On January 26, 2006, defendant advised plaintiff that the Illness Bank "code" utilized for purposes of employees' electronic timesheets would be eliminated consistent with the "end date" identified in the MOU and that employees should utilize the PTO code on their timesheets for future absences relating to illness. Thereafter, defendant received various grievances from bargaining unit employees alleging that defendant had breached the Agreement by eliminating the Illness Bank benefit. Defendant denied the grievances on the grounds that they were untimely filed and that the MOU expired by its own terms and was not part of the existing CBA. Defendant then refused to further process the grievances through arbitration, contending that the dispute was not subject to the Agreement's arbitration provision. Thereafter, plaintiff filed this suit seeking to obtain an order compelling defendant to submit the grievances to arbitration.[3]

---

[3]In an effort to resolve plaintiff's claim, defendant offered to submit the grievances to a bifurcated arbitration process, with the timeliness of the grievances being determined first and, if plaintiff succeeded on that issue, with the merits of the grievances being determined in a subsequent proceeding before a different arbitrator. In its motion for summary judgment and in the pretrial order, plaintiff requests an order rejecting defendant's bifurcated arbitration approach and compelling defendant to arbitrate all issues concerning the

4

**Discussion**

As stated in the pretrial order, plaintiff seeks to compel arbitration of its grievances challenging defendant's elimination of the Illness Bank benefit established in the parties' Memorandum of Understanding. According to plaintiff, the grievances are subject to arbitration because the MOU is part and parcel of the CBA and, therefore, any dispute arising under the MOU is subject to the arbitration provision of the CBA.[4] Plaintiff further argues that, even assuming that the MOU constitutes a separate agreement such that it is not part of the CBA, the dispute here must nonetheless be arbitrated because it relates to a subject that is within the broad scope of the CBA's arbitration provision. Defendant, on the other hand, contends that the grievances are not subject to arbitration because the MOU does not contain an arbitration provision and it is an entirely separate and distinct contract from the CBA such that the arbitration provision in the CBA does not apply to disputes arising under the MOU.[5]

---

grievances–both procedural and substantive–in a single arbitration hearing before a single panel of arbitrators. The court, however, does not read defendant's papers as suggesting that defendant believes it is entitled to a bifurcated proceeding if the court finds that the grievances must be submitted to arbitration. Rather, the court reads defendant's papers as simply offering that approach as a way to settle plaintiff's claim in this lawsuit. In any event, any decisions concerning the appropriateness of a bifurcated approach is best left to the arbitrator. *See Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1267 (10th Cir. 1999) (matters of procedure lie solely within the discretion of the arbitrator) (citing *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557 (1964)).

[4]It is undisputed that neither the CBA nor the Contract Extension Offer expressly incorporates or otherwise references the MOU and plaintiff does not contend otherwise. Rather, plaintiff contends that the MOU is part and parcel of the CBA based primarily on the parties' intent and the history of the parties' negotiations.

[5]In the pretrial order, defendant asserts as affirmative defenses that plaintiff did not file this action in a timely manner and that the underlying grievances were untimely under the

Whether a particular grievance is arbitrable under the terms of a collective bargaining agreement is a question of law. *Local 5-857 Paper, Allied-Industrial, Chemical & Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1125-26 (10th Cir. 2003) (citing *O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 901 (10th Cir. 1992)). In resolving this question, the court begins by acknowledging–as defendant reiterates throughout its briefing–that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *See id.* at 1126 (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). "It follows that '[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "At the same time, 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'" *Id.* (quoting *AT&T*, 475 U.S. at 649).

Moreover, "when a contract contains an arbitration clause, there is a presumption in favor of arbitrability" such that "'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

---

terms of the CBA. Plaintiff moves for summary judgment on these issues. In its papers, however, defendant expressly acknowledges that this suit is not time-barred and that, if the court concludes that the grievances must be submitted to arbitration, then any issues relating to the timeliness of the grievances should be left to the arbitrator. These portions of plaintiff's motion, then, are granted as unopposed without further discussion.

6

interpretation that covers the asserted dispute.'" *Id.* (quoting *AT&T*, 475 U.S. at 650). Any doubts "should be resolved in favor of coverage." *Id.* (quoting *AT&T*, 475 U.S. at 650). Finally, the Supreme Court "has held that the presumption is 'particularly applicable' where, as in the case [here], there is a broad arbitration clause." *Id.* (quoting *AT&T*, 475 U.S. at 650). "In such cases, in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (quoting *AT&T*, 475 U.S. at 650).

As noted above, plaintiff seeks to compel arbitration of its grievances challenging defendant's elimination of the Illness Bank. In connection with their motions for summary judgment, the parties would have the court resolve whether the MOU expired on its own terms or whether it was part and parcel of the CBA such that the MOU was extended when the collective bargaining agreement was extended. The court, however, cannot resolve whether the MOU expired or was extended without also resolving the merits of the underlying claim. For if the MOU expired by its own terms, then defendant did not "eliminate" the Illness Bank as argued by plaintiff (and there would be no dispute to arbitrate) and if the MOU was extended, then it is necessarily part and parcel of the CBA such that defendant, in all likelihood, would not have been permitted to eliminate the Illness Bank. In other words, if the court were to decide whether the MOU expired or was extended, then there would be no dispute left to arbitrate. These issues, then, are for the arbitrator to decide. *See AT&T*, 475 U.S. at 649-50 ("[T]he union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the

7

arbitrator."). The only appropriate issue for this court to decide is whether the grievances are arbitrable. Resolving that issue, the court, as will be explained, concludes that even if the MOU is not part and parcel of the collective bargaining agreement (an issue of fact for the arbitrator to decide in connection with whether the MOU expired or whether it was extended), the grievances in this case are nonetheless arbitrable because, at the very least, the MOU is a side agreement with a subject matter that falls within the scope of the agreement's arbitration clause.[6]

The question of whether a dispute over a side agreement that does not provide for arbitration falls within the CBA's arbitration clause is one that has not been addressed by the Tenth Circuit. Several other circuits, however, have examined this issue and, without exception, each of those Circuits, in analyzing the issue, looks first to the scope of the particular arbitration clause contained in the collective bargaining agreement. *See, e.g., United Steelworkers of Am., AFL-CIO, CLC v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 279 (6th Cir. 2007) ("In determining the arbitrability of side letters and side agreements, we begin our inquiry by analyzing the CBA's arbitration clause."); *United Steelworkers of Am., AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d

---

[6]Defendant contends that plaintiff has waived its "side agreement" argument by failing to preserve that argument in the pretrial order. While the phrase "side agreement" is not utilized in the pretrial order, the pretrial order does preserve as issues "whether . . . an MOU that is not incorporated within or appended to a collective bargaining agreement is subject an agreement to arbitrate" and whether "the arbitration clause found in the collective bargaining agreement arguably covers the grievances in dispute." These issues are framed broadly enough to encompass plaintiff's argument concerning the arbitrability of disputes arising under side agreements. Moreover, defendant has not asserted that it will suffer any prejudice if plaintiff is permitted to advance this argument and the absence of prejudice to defendant is a substantial factor weighing in favor of the court's construction of the pretrial order.

8

786, 788 (8th Cir. 2005) (expressly following the Second Circuit's approach and deciding first "whether the arbitration clause is narrow or broad"); *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1080 (9th Cir. 2002) ("Whether a dispute arising under a side agreement is arbitrable depends on the scope of the arbitration clause in the CBA."); *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983) (same). If the particular arbitration clause is broad, then, under the approach of every Circuit,[7] a dispute arising under a side agreement is arbitrable if the subject matter of the side agreement is within the scope of the arbitration clause or otherwise relates to the subject matter of the CBA. *See Cooper Tire*, 474 F3d at 279 (disputes over a side agreement are arbitrable if the subject matter of the side agreement is within the scope of the CBA's arbitration clause); *Duluth Clinic*, 413 F.3d at 789 ("Only if the clause is broad does the court analyze whether the dispute relates to the subject

---

[7] The Circuit Courts of Appeal diverge in their approaches only when the arbitration clause is narrow. In that case, the Eighth and Second Circuits analyze whether the dispute involves an agreement "collateral" to the agreement containing the arbitration clause, *see Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) (rule prohibiting the application of an arbitration agreement to collateral claims does so only when the arbitration agreement is narrow); *Prudential Lines*, 704 F.2d at 63 (only if the clause is narrow does the district court examine whether the dispute involves a "collateral" agreement), while the Sixth and Ninth Circuits–consistent with their approach when faced with broad clauses–simply analyze whether the subject matter of the side agreement falls within the narrow scope of the arbitration clause. *See Cooper Tire*, 474 F.3d at 279 ("With the scope of the arbitration clause in mind, we then look to the subject matter of the side agreement to determine if it falls within the clause's intended coverage."); *Dutra Group*, 279 F.3d at 1080 (narrow clause covering, by way of example, only disputes over discipline and discharge would not include disputes arising under side agreement concerning the assignment of vacation days). Because the arbitration clause contained in the Agreement in this case is broad, the court is not required to consider which approach it believes the Tenth Circuit would adopt if faced with a narrow clause and the extent to which the Circuits diverge in their approaches regarding narrow arbitration clauses is simply not pertinent to this case.

matter of the agreement."); *Dutra Group*, 279 F.3d at 1080 ("[D]isputes arising under a side agreement must be arbitrated if the dispute relates to a subject that is within the scope of the CBA's arbitration clause."); *Fleet Tire Serv.*, 118 F.3d at 621 (broad arbitration clause subjects to arbitration collateral disputes that relate to the agreement containing the clause); *Prudential Lines*, 704 F.2d at 63-64 (if the arbitration clause is broad and arguably covers the dispute, court should compel arbitration).

The specific arbitration clause contained in the parties' Agreement provides that "[d]ifferences arising between the Union and the Company relating to the interpretation or performance of this Agreement" shall be submitted to arbitration. Both the Supreme Court and the Tenth Circuit have described as "broad" identical arbitration clauses. *See AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A] presumption [of arbitration] is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder.'"); *Local 5-857 Paper, Allied-Industrial, Chemical & Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1124 & n.1, 1126 (10th Cir. 2003) ("differences arising between the Union and Company relating to interpretation or performance of this Agreement" constitutes a broad arbitration clause). Without question, then, the arbitration clause in this case is a broad clause such that the grievances are arbitrable so long as the subject matter of the MOU is within the scope of the arbitration clause or otherwise relates to the subject matter of the Agreement.

The subject of the MOU is a specific type of personal leave–an Illness Bank

10

program–established to supplement the paid time off (PTO) and illness of a family member (IFM) programs provided by defendant to bargaining unit employees. While the narrow subject of an Illness Bank is not discussed in the Agreement, references to other types of personal leave, including PTO and IFM leave, are found in Article XVII of the Agreement and other references to the PTO and IFM programs are found in various places in the Agreement.[8] The Illness Bank is certainly related to the Agreement provisions concerning time off and personal leave (including the PTO and IFM programs) because, pursuant to the express provisions of the MOU, an employee is not entitled to utilize Illness Bank leave until that employee has exhausted a certain amount of PTO and IFM leave–subjects, again, that are covered in the Agreement. Thus, the subject of the MOU–Illness Bank leave–certainly can be said to pertain to a subject addressed in the Agreement–namely, time off and personal leave. In sum, given the court's broad reading of the Agreement's arbitration clause, the grievances challenging the elimination of the Illness Bank benefit clearly falls within its scope. *See Cooper Tire*, 474 F.3d at 279-80 (side agreement concerning retirement healthcare contribution caps fell within scope of CBA's arbitration clause where CBA referenced medical benefits generally and healthcare coverage of retired employees).

---

[8]The Agreement expressly indicates that the time off and personal leave provisions will be changed effective June 1, 2002 to mirror the time off and personal leave programs offered to non-represented employees and that the PTO provisions will be changed effective January 1, 2003 to mirror the PTO program offered to non-represented employees. Nonetheless, there is no dispute that these subjects were still part of the Agreement and that any dispute concerning these subjects would still be subject to arbitration after the substance of the provisions changed to mirror the programs offered to non-represented employees.

Because the court cannot say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *AT&T*, 475 U.S. at 650, and "doubts should be resolved in favor of coverage," *id.*, the grievances in this case should go to the arbitrator. *Local 5-857*, 320 F.3d at 1127.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for summary judgment (doc. 24) is granted; defendant's motion for summary judgment (doc. 25) is denied; and defendant is directed to submit the grievances to arbitration. The court will stay the judicial proceedings in this case pending completion of the arbitration process. Counsel for the parties are directed to report to the court in writing no later than May 2, 2008, concerning the status of that arbitration in the event that it has not been terminated earlier. Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED** this 2nd day of November, 2007.

                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge